# EXHIBIT 2

ER #23196 - C7 PRODUCTION, INC.
TRIAL OF THE CHICAGO 7 (THE)
L-817 CBA

## LOCATION COLLECTIVE BARGAINING AGREEMENT

This Agreement is entered into in the City and State of New York between **C7 PRODUCTION INC.** (hereinafter referred to as "Employer") and LOCAL NO. 817 of the INTERNATIONAL BROTHERHOOD OF TEAMSTERS (hereinafter referred to as "Local 817" or "Union") for the production of *THE TRIAL OF THE CHICAGO 7*.

### WITNESSETH:

WHEREAS, the Union is a duly authorized and recognized representative of Assistant Location Managers, Location Scouts, Location Coordinators, and Location Assistants in the theatrical, motion pictures, television and entertainment industries.

WHEREAS, the Employer is engaged in the feature motion picture and television business.

NOW, THEREFORE, in consideration of the mutual covenants and conditions herein contained, the parties hereto agree as follows:

**ARTICLE 1.** RECOGNITION
The Employer recognizes the Union as the exclusive collective bargaining representative of all employees employed by the Employer in the job classifications listed in this Agreement. The Union makes this Agreement on behalf of such employees, the majority of whom the Union warrants are members of the Union in good standing. The Union represents that the terms of this Agreement have been submitted to its membership and have been duly approved thereby.

**ARTICLE 2.** JURISDICTION
The jurisdiction of the Union shall include the States of New York, New Jersey, and Connecticut. That area which is outside of 30-mile radius of New York City's Columbus Circle shall be a Distant Location, as defined in Article 26 of this Agreement.

**ARTICLE 3.** TERM OF AGREEMENT
The Agreement shall have a term commencing on **DATE OF HIRE** and terminating on **JUNE 30, 2020**.

**ARTICLE 4.** UNION SECURITY
Employees covered by this Agreement, as a condition of employment, shall become and thereafter remain members in good standing of the Union on and after the thirtieth (30th) day of their employment. All employees covered by this Agreement who subsequently become members of the Union during the effective term of this Agreement shall thereafter remain members in good standing as a condition of continued employment.

   a. For the purposes of this Article, an Employee shall be considered a member of the Union in good standing if their periodic dues and initiation fees uniformly required as a condition of membership have been tendered, consistent with applicable law.

   b. An Employee who has failed to maintain membership in good standing as required by this Article shall, within thirty (30) calendar days following receipt of a written demand from the Union requesting his/her discharge, be discharged if, during such period, the required dues and initiation fees have not been tendered.

Exhibit 2 0013

c.  Producer agrees to inform the Union within seven (7) working days of a newly-hired employee covered by this Agreement. Such notice will include full name, address, contact information, and social security number.

**ARTICLE 5.** WAGE SCALES, HOURS OF EMPLOYMENT AND WORKING CONDITIONS
Wage scales, hours of employment and working conditions shall be as set forth in the "Wage Scales, Hours of Employment and Working Conditions" herein.

**ARTICLE 6.** PERSONAL SERVICE CONTRACTS
Nothing in this Agreement shall prevent any individual from negotiating better terms and conditions of employment. Upon request, the Producer will provide the Union with Deal Memos and all Personal Service Contracts to ensure conditions are at least equal to the minimum requirements of this Agreement.

**ARTICLE 7.** GRIEVANCE AND ARBITRATION
All complaints or disputes involving questions of the interpretation or application of any of the clauses of this Agreement, which complaints or disputes have not been adjusted between the parties, shall be referred to Arbitration. An Arbitrator shall be selected pursuant to the rules of the American Arbitration Association. The decision of the Arbitrator shall be arrived at as promptly as possible, and shall be binding and conclusive upon the parties hereto.

**ARTICLE 8.** NO STRIKE NO LOCKOUT
The Union agrees that during the period of this Agreement it will not strike against, picket, boycott, or otherwise interfere or curtail the business of the Employer, and the Employer agrees that there will be no lockout during the same period. The obligations under this Article shall not apply in the event the other party shall fail to comply with an arbitration award rendered against that party pursuant to Article 7 of this Agreement.

**ARTICLE 9.** CONFLICT WITH LAWS
In the event any provision of this Agreement is in direct conflict with the applicable law, it is understood and agreed that such provision is severable from the remainder of this Agreement and shall not be operative so long as such conflict exists, but shall become operative immediately upon the repeal of said law.

**ARTICLE 10.** INTERPRETATION
Unless otherwise specifically defined herein, the terms of this Agreement shall be given common meaning in the motion picture and television industry.

**ARTICLE 11.** HEALTH AND WELFARE & PENSION CONTRIBUTIONS
During the period from the first (1st) day of employment until the completion of production, the Employer will make contributions on behalf of each employee as set forth in this Agreement.

**ARTICLE 12.** MOTION PICTURE INDUSTRY PENSION AND HEALTH PLANS
a.  The Employer shall pay for the covered job classifications under this Agreement the following hourly contribution rates to the Motion Picture Industry Pension and Health Plans (MPIPHP) for the term of this Agreement as follows:

Exhibit 2 0014

| Effective as of 03/26/2017 | Effective as of 03/25/2018 |
|---|---|
| Active Health Plan: $8.4150 | Active Health Plan: $8.4150 |
| Retiree Health Plan: $1.9600 | Retiree Health Plan: $1.9600 |
| Pension Plan: $4.0730 | Pension Plan: $4.4130 |
| **Total Hourly Composite Rate: $14.448** | **Total Hourly Composite Rate: $14.788** |

These contribution rates may be modified to rates set by the Board of Directors of the Motion Picture Industry Pension & Health Plans on a determination by the actuaries and consultants of the MPIPHP, which will be based upon the hourly cost of benefits.

Contributions made on behalf of daily and weekly employees shall be made for each hour worked or guaranteed, whichever is greater.

b.  If, at any time during the term of this Agreement, the consultants for the Health and Pension Plans project that the level of reserves in the Active Employees Fund will fall below six (6) months, or that the level of reserves in the Retired Employees Plan will fall below eight (8) months, then the Union will reallocate up to one percent (1%) from the Individual Account Plan until such time as the reserves are restored to the six (6) or eight (8) month level, as applicable. It is understood that this may occur more than once during the term of this Agreement. It is further understood that this reallocation cannot take place under the terms of this Agreement until on or after the effective date of the beginning of the application of the Individual Account Plan as set forth under Article 13.

**Article 13.** MPIPHP IAP
Effective July 1, 2019, the Employer shall begin contributing to the Individual Account Plan for all covered employees as follows:

Two percent (2%) of the minimum hourly straight time rate set forth in the wage scales of this Agreement for all hours worked in a day up to a maximum of 12 hours.

**ARTICLE 14.** SPECIAL CONDITIONS FOR ENTRY-LEVEL LOCATION ASSISTANTS
Individuals hired as Entry-Level Location Assistants, defined as someone who has worked less than a total of 180 work-days as a Location Assistant in the Motion Picture and Television Industry, shall not be entitled to coverage under Articles 11, 12 and 13 above.  The Employer shall be required to make contributions on behalf of all such individuals in their employ commencing on the 181st day of employment and thereafter.  The Employer and the Union agree to utilize payroll records to verify days worked for this purpose and the Employer will instruct the payroll company to provide the Union with payroll information on a quarterly basis.  The Employer is required to notify the Union of a Location Assistant's status as entry-level or not entry-level and will cooperate in good faith to establish a streamline system for making such verifications.

Exhibit 2 0015

**ARTICLE 15.** MULTI -EMPLOYER BARGAINING UNIT
The bargaining unit covered by this Agreement is a single multiemployer unit consisting of the Producers listed in the preamble to this Agreement on page 1 and those Employers who have and may hereafter become parties to this Agreement and who voluntarily signify their consent, in writing, to be part of this multi-employer bargaining unit and to be bound by this Agreement and any amendments, extensions or renewals thereof.

**ARTICLE 16.** WAIVER OF NEW YORK EARNED SICK TIME ACT AND SIMILAR LAWS
The Union expressly waives, to the full extent permitted by law, application of the following to all employees employed under this Agreement: the New York City Earned Sick Time Act of 2013; Chapter 160 of the Ordinances of the Township of Bloomfield, New Jersey (enacted by Ordinance No. 15-10); the Paid Sick Time for Private Employees Ordinance of East Orange, New Jersey (Ordinance No.21-2014; East Orange Code Chapter 140, Section 1 *et seq.*); the Paid Sick Time Law of Jersey City, New Jersey (Chapter 4 of the Jersey City Municipal Code); the Sick Leave for Private Employees Ordinances of Irvington, New Jersey (Ordinance No. MC-3513); Montclair, New Jersey; Newark, New Jersey (City Ordinance 13-2010); Passaic, New Jersey (Ordinance No. 1998-14); Paterson, New Jersey (Paterson Code Chapter 412): Trenton, New Jersey (Ordinance No. 14-45) and Elizabeth, New Jersey (Ordinance No. 4617); and any other ordinance, statute or law requiring paid sick leave that is hereafter enacted.  It is understood that the Union and the Employer shall memorialize any such waiver for any newly-enacted law by letter agreement.

**ARTICLE 17.** WAGE SCALES

    (a)  MINIMUM WAGE SCALES
       i.  Effective July 1, 2017

|  | TELEVISION | | THEATRICAL | |
|---|---|---|---|---|
| **Assistant Location Manager** | Hourly rate: | $26.25 | Hourly rate: | $27.56 |
| **Location Scout** | Hourly rate: | $25.00 | Hourly rate: | $26.25 |
| **Location Department Coordinator** | Hourly rate: | $20.00 | Hourly rate: | $21.00 |
| **Location Assistant** | Hourly rate: | $16.00 | Hourly rate: | $16.80 |

Exhibit 2 0016

ii. Effective July 1, 2018

|  | TELEVISION | | THEATRICAL | |
|---|---|---|---|---|
| **Assistant Location Manager** | Hourly rate: | $27.04 | Hourly rate: | $28.39 |
| **Location Scout** | Hourly rate: | $25.75 | Hourly rate: | $27.04 |
| **Location Department Coordinator** | Hourly rate: | $20.60 | Hourly rate: | $21.63 |
| **Location Assistant** | Hourly rate: | $16.48 | Hourly rate: | $17.30 |

iii. Effective July 1, 2019

|  | TELEVISION | | THEATRICAL | |
|---|---|---|---|---|
| **Assistant Location Manager** | Hourly rate: | $27.85 | Hourly rate: | $29.24 |
| **Location Scout** | Hourly rate: | $26.52 | Hourly rate: | $27.85 |
| **Location Department Coordinator** | Hourly rate: | $21.22 | Hourly rate: | $22.28 |
| **Location Assistant** | Hourly rate: | $16.97 | Hourly rate: | $17.82 |

(b) INDIVIDUAL NEGOTIATIONS
Nothing herein shall prevent any individual covered by this Agreement from negotiating directly with an Employer and entering into an individual agreement with respect to better terms and conditions of employment.

(c) OVERSCALE EMPLOYEES
It is not the intent of this Agreement to affect any overscale compensation which an employee may have been receiving prior to the effective date of the execution of this Collective Bargaining Agreement (CBA). To that extent, it is understood that employees receiving wages in excess of the minimum rates stated above that were employed prior to July 1, 2017, or subsequently employed at overscale rates before the execution of this CBA, and whose employment continues past the execution of this CBA shall not have his/her overscale reduced as a result of this CBA through the completion of employment on such feature film, television pilot or season of an episodic series.

Further, for this purpose only, it is understood that an employee hired prior to July 1, 2017 at overscale rates and brought back to work on the same production, or series, after the execution of this CBA shall continue to be employed at such overscale rate.

**ARTICLE 18.** CLASSIFICATION AND WAGE SCHEDULE
Each Employee shall be notified at the time of their employment under which classification and wage schedule they have been employed. When an Employee works any part of the workday in a higher pay classification, the Employee shall be paid the higher pay rate for the entire workday. There shall be no layoffs or other reductions solely to avoid any premium pay.

**ARTICLE 19.** MINIMUM GUARANTEES
a. Weekly Employees
Employees hired on a weekly basis are guaranteed a minimum of five (5) consecutive days at twelve (12) hours per day at the rates set forth above. A Weekly Employee working for a fractional workweek at the beginning or end of their employment shall be paid one-fifth (1/5) of their Weekly rate per day (including holidays not worked.)

Exhibit 2 0017

The classifications of an Assistant Location Manager, Location Scout, Location Department Coordinator, and Location Assistant employed on a weekly basis shall be guaranteed a sixty (60) hour workweek.

The minimum guarantee for work on a sixth (6th) day, seventh (7th) day, or holiday for a Weekly Employee shall be one-fifth (1/5) of their Weekly rate per day.

b. Daily Employees
Employees hired on a daily basis shall receive an eight (8) hour guarantee on any work day.

c. Studio Workweek
The workweek shall consist of any five (5) consecutive days out of seven (7) consecutive days, commencing with the first such five (5) days. A workday starting on one calendar day and running into the next calendar day shall be credited to the first calendar day, except that an employee whose work shift overlaps into a holiday shall be paid at double time for those hours worked on the calendar holiday.

d. Overtime

   i.   Weekly Employees: Weekly Employees shall be paid premium pay at time and one-half (1.5X) their hourly rate of pay for all hours worked, or part thereof, after 8 hours in a day; or for all hours worked, or part thereof, after 60 hours in a workweek.

   ii.  Daily Employees: Daily Employees shall be paid premium pay at time and one-half (1.5X) their hourly rate of pay for all hours worked, or part thereof, after 8 hours in a day up to and including the twelfth (12th) hour

        After the twelfth (12th) hour, Daily Employees shall receive double time (2X) for all hours worked, or part thereof, after 12 hours in a day.

   iii. Overtime for Weekly and Daily Employees shall be paid in 10-minute increments.

e. Sixth or Seventh Day Worked: If an employee is required to work on the sixth (6th) or seventh (7th) day within the employee's workweek, they shall be paid one and one-half times (1.5X) their hourly rate of pay for all hours worked, or part thereof, for the sixth (6th) or seventh (7th) day so worked.

f. Seventh Consecutive Day Worked or Work on a Holiday: If an employee is required to work on a holiday as recognized in this Agreement or on the seventh (7th) consecutive day within the employee's workweek, the employee shall be paid two times (2X) their hourly rate of pay for all hours worked, or part thereof, for each holiday, or for each such seventh (7th) day worked.

g. An employee shall not be replaced on a production for the purpose of avoiding premium pay for the sixth or seventh consecutive days worked in a workweek.

**ARTICLE 20.** CANCELLATION OF CALL
The Employer may cancel the call of any employee subject to this Agreement by notifying the employee no later than 8:00 p.m. on the evening before the day of the call. If the Employer fails to notify an employee of a cancelled call by 8:00pm on the evening before the day of the call, such employee shall be paid as if they worked the call.

**ARTICLE 21.** REST PERIODS
All employees shall be entitled to a minimum of eight (8) hours rest between calls. When the rest period is invaded, such employee shall receive double time at the applicable weekly rate until such employee receives

6

Exhibit 2 0018

eight (8) hours rest. It is understood that the double time at the applicable weekly rate applicable to this provision shall not be compounded with any other overtime.

**ARTICLE 22.** DEFINITION OF WORK
The duties assigned to the job classifications covered by this agreement, while not specifically set forth in detail, will be consistent with the general custom and practice of past work assignments on the Employers' productions. The description of duties in this Article is not intended, nor shall it be construed, as to enlarge or diminish the professional duties of the Assistant Location Manager, Location Scout, Location Coordinator, and Location Assistant, as such duties are presently and were heretofore customarily performed in motion picture and television productions done within the geographical scope of this Agreement. The duties set forth below are customarily assigned to bargaining unit employees.

Assistant Location Manager duties are: following the direction of the Location Manager and overseeing all aspects of the location department's functions in serving the needs of the production.

Location Scout duties are: the search for locations for future use by productions and the securing of necessary permits and other required documentation for use of locations.

Location Coordinator duties are: working in the Production Office coordinating the daily work of and providing clerical support for the Locations Department.

Location Assistant duties are: maintaining the negotiated condition and the use of location sites (set) and support spaces, in accordance with rental contracts or governmental permits. The Location Assistant serves as a liaison between the Location Department and worksite and communities (e.g. generating and distributing letters, set and directional signs, etc.).

Further, as it relates to the limited description of duties set forth above, many specific functions are not exclusive and may be performed by any individual working in any covered job classification (e.g. answering phones, making copies, completing particular forms) and consistent with long-standing custom and practice are not exclusive to any particular job classification.

It is understood that members of the Locations Department employed under this Agreement are under the direction of the Location Manager. The Employer agrees that the utilization of Assistant Location Manager, Location Scout, Location Coordinator, and Location Assistant shall not be unreasonably withheld.

It is the intention of the parties to protect and preserve bargaining unit work for bargaining unit employees. The Employer will not give work to non-bargaining unit employees which is normally performed by bargaining unit employees where qualified bargaining unit employees are available.

**ARTICLE 23.** USE OF EMPLOYEE CAR
If the Employer requires the employee to use his/her car in the performance of the employee's duties, the Employer shall have the choice to either pay a car allowance of $40.00 per day ($45.00 effective July 1, 2018; $50.00 effective July 1, 2019) for each day the car is required by the Employer and in addition reimburse for the cost of fuel used in the performance of such duties upon the submission of receipts or other such documentation required by the Employer.

As an alternative to the above, the Employer may elect to pay a car allowance of $60.00 per day ($65.00 effective July 1, 2018; $70.00 effective July 1, 2019) for each day the car is required by the Employer and such car allowance shall include any fuel costs incurred by such employee.

The car allowance elected above by the Employer shall be paid in the employee's weekly pay check.

In addition to the above, the Employer shall reimburse the employee for tolls, and parking upon the submission of receipts or other such documentation required by the Employer.

7

Exhibit 2 0019

The Employer may elect to provide the employee with a vehicle and pay the vehicle's operating cost instead of paying the car allowance for the use of the employee's car.

It is understood that not all employees working under this Agreement will need a car for the performance of their duties and that the decision to provide such employee with a car or to pay an employee for the use of the employee's car is solely at the discretion of the Employer.

**ARTICLE 24.** HOLIDAYS
The Following are paid holidays: New Year's Day, Presidents' Day (third Monday in February), Good Friday, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the day after Thanksgiving and Christmas Day.

If any of the above holidays falls on a Saturday, the preceding Friday shall be considered the holiday and if the holiday falls on Sunday, the following Monday shall be considered the holiday except that on distant locations, Saturday holidays will be recognized on Saturday.

If a daily employee works the business day before and the business day after a recognized holiday, the employee shall receive eight (8) hours of straight pay for that unworked holiday.

**ARTICLE 25.** NEARBY LOCATION DEFINITIONS AND WORKING CONDITIONS
Nearby Location Defined: Nearby Locations are those locations outside of the studio zone on which employees are not lodged overnight but return to the studio or home at the end of the workday.

Working Conditions: Studio Rates and Working Conditions shall prevail on Nearby Locations.

**ARTICLE 26.** DISTANT LOCATION DEFINITIONS AND WORKINGCONDITIONS
   a.   Distant Location Defined.
        Distant Locations are locations on which the employee is required to remain away and be lodged overnight.

   b.   Working Conditions:
        i.    Employees shall be entitled to reimbursement for actual room and board expenses on location with a minimum of $10.00 for breakfast, $15.00 for lunch and $20.00 for dinner. Each employee shall be entitled to a single room and first-class accommodations.
        ii.   Notwithstanding any of the other provision of this Agreement, the following shall apply to all employees with respect to the sixth (6) and seventh (7) days in the employee's workweek on distant locations.

              1. An employee who is working on Distant Location for six (6) or seven (7) days in a week shall receive for the sixth or seventh day not worked an allowance equal to eight (8) straight hours of pay and eight (8) hours of benefit contributions.

              2. If an employee works six (6) days in a workweek on Distant Location, the employee shall be paid an additional amount equal to one and one-half times one-fifth (1/5) of the schedule studio minimum salary in effect.

              3. If an employee works seven (7) consecutive days within a workweek on Distant Location, they shall be paid an additional two (2) times one-fifth of the scheduled studio minimum weekly rate in effect for each such seventh day worked.

        iii.  Holidays on Distant Location

8

Exhibit 2 0020

If an employee is required to work on a recognized holiday on distant location, the employer shall pay the employee an additional two (2) times one-fifth of the scheduled studio minimum weekly rate in effect for each such holiday worked.

    iv.    Traveling Expenses and Accommodations

        1.  Traveling Expenses: The employee's necessary traveling expenses, meals and lodging shall be made at the Employer's expense. The Employer shall provide for coach air for domestic flights when the flight is non-stop from departure to final destination. The Employer shall provide for business class for all other flights when available.

            Baggage fees and in-flight meals for coach class air travel shall be reimbursed by the Employer provided that a request for reimbursement with appropriate receipts is submitted within 30 days after the flight.  Employees on Distant Location shall be entitled to single room housing.

        2.  Travel Insurance: The Employer shall provide accidental death insurance in a sum not less than one hundred thousand dollars ($100,000) for the benefit of the employee's designated beneficiary when the employee is required to travel in transportation furnished by the Employer.

**ARTICLE 27**. HAZARDOUS WORK: Employees may refuse to work in hazardous situations without jeopardizing work opportunities. If an employee chooses to work in a hazardous situation, they shall negotiate with the Employer a fee in advance for such work.

**ARTICLE 28**. AIRCRAFT PAY: When the Employer directs an employee to take pictures or scout locations while airborne, the Employer shall provide the employee with an allowance of between sixty dollars ($60) to one hundred eighty dollars ($180) per flight in any single shift of work.  The allowance is paid in addition to the employee's applicable rate of pay.

**ARTICLE 29**. EARNINGS REPORTS: At the end of each quarter, the Employer will submit to the Union a list of its employees subject to this Agreement showing each employee's earnings for that quarter.

**ARTICLE 30**. STUDIO PASS/ACCESS: The designated representatives of the Union shall be permitted reasonable access to all production sites where persons covered by this Agreement are performing services. The Union representatives shall be permitted to visit any part of the production site necessary to conduct Union business during working hours.

**ARTICLE 31**. NON-DISCRIMINATION: There shall be no discrimination against any employee due to race, color, creed, religion, sex, sexual orientation, age qualified disability, national origin or union membership, as provided in federal and state legislation.  Disputes arising under this provision are not subject to Article 7 "Grievance and Arbitration;" such disputes are instead subject to non-binding mediation.

**ARTICLE 32**. REPORTING OF ACCIDENTS: The nature and place of hospitalization of all accident cases requiring hospitalizations shall be reported to the Union by the Employer as soon as possible after the accident.

**ARTICLE 33**. JURISDICTIONAL DISPUTES: The Union agrees to cooperate in good faith with the Producer and other Local Unions and Guilds within the industry in working out a method for the determination of jurisdictional disputes without work stoppages. Appropriate clauses shall be incorporated in this Agreement to cover any method that shall be agreed upon.

9

Exhibit 2 0021

**ARTICLE 34.** <u>MEAL PERIODS AND MEAL REIMBURSEMENT</u>:  Reasonable time for meals shall be allowed all employees employed under this Agreement. If a meal has not been provided, employees shall be entitled to reimbursement for $9.50 for breakfast, $11.00 for lunch and $14.50 for dinner, contingent upon submission of receipts for such meals.

**ARTICLE 35.** <u>REIMBURSEMENT OF STOLEN CASH FUNDS</u>: The employee shall not be required to reimburse cash funds advanced by the Employer which are stolen, provided the theft is verified and the Employee has exercised due diligence in caring for the funds. In any dispute concerning the Employer's right to require reimbursement, the employee shall have the burden of verifying the theft.

**ARTICLE 36.** <u>LATE PAYMENTS</u>: If an employee does not receive payment of wages or salary on a timely basis, Employer shall within three (3) days after being so notified by the employee or Union, issue a check in payment of same to the employee.

**ARTICLE 37.** <u>MISCELLANEOUS PROVISIONS</u>:
   a. DOCUMENTS: Upon request by the Union, the Employer shall provide the Union with access to all payroll documents, start forms, and other employee records for all employees working in covered crafts and classifications. The Employer shall cooperate in good faith with the Union in any audit of this production undertaken by the Union or its agents. Upon request by the Union, the Employer shall provide the Union a complete current crew list which notes those employees' classifications.

   b. PROFESSIONAL EQUIPMENT RENTAL (KIT OR BOX): Employees covered by this Agreement may directly negotiate over the payment of an employee's entire kit (e.g. Computer, Camera, cell phone and accessories), and payment for such kit shall be based on either a daily or weekly payment throughout the production, and shall cover equipment required by the Employer to be supplied by an employee.

   c. PETTY CASH: The Employer shall reimburse employees for pre-approved and authorized out-of-pocket expenses incurred in the course and scope of employment. The employee shall not be expected to go "out-of-pocket" for any production-related expenses when petty cash is not returned or available. Petty cash shall be turned around within forty-eight (48) hours after receipts have been turned into Employer.

**THEATRICAL TEAMSTERS**                          **C7 PRODUCTION INC.**
                                                  ***THE TRIAL OF THE CHICAGO 7***

By: _____Thomas J. O'Donnell_____     By: _____Tyler Thompson_____

Signature: __Thomas J. O'Donnell__        Signature: _____

Title: _____President_____          Title: _____President_____

Date: _____9/6/2019_____            Address: __5607 South Hollywood Rd__
                                                    __Thima LA 103600__

                                          Phone: __985-876-0131__

                                          Date: __9/6/19__

10

Exhibit 2 0022